UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY J. WALTON,

    Plaintiff,

    v.

KMART CORPORATION,

    Defendant.

_____/

No. C 07-0707 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IT IN PART**

Defendant's motion for summary judgment came on for hearing before this court on April 16, 2008. Plaintiff appeared by her counsel Victor C. Thuesen and Marc Francis, and defendant appeared by its counsel Cheryl L. Schreck. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion in part and DENIES it in part.

**INTRODUCTION**

This is an employment discrimination case, alleging age and gender discrimination. Plaintiff Mary Walton was employed by defendant Kmart Corporation ("Kmart" – sued as K-Mart, Inc.) as a sales associate at its store in Santa Rosa, California, from February 1970 until she was terminated in January 2006 as part of a reduction-in-force. Plaintiff was 67 years old at the time she was terminated.

Plaintiff filed this action on December 7, 2006, alleging three causes of action under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940, et seq. Plaintiff asserts claims of disparate treatment based on age, disparate treatment based on gender, and disparate impact based on age. Kmart now seeks summary judgment.

## BACKGROUND

Kmart operates a number of full-line retail department stores in the United States. In recent years, Kmart has faced financial difficulties. After filing for bankruptcy protection in 2002, Kmart eventually emerged from bankruptcy with a new owner. In 2004, Kmart reduced its workforce on a nationwide basis in an effort to control costs and remain viable in a difficult retail market.

In March 2005, Kmart and Sears, Roebuck & Co., another struggling retailer, merged in an effort to maintain market share. Following the merger, Kmart continued to face competitive pressures from other retailers. In the fall of 2005, while planning for 2006 and the years beyond, Kmart's management determined that further cost savings were necessary in order that Kmart could survive.

After some study, Kmart determined in late 2005 that its overall ratio of full-time to part-time sales associates was too high, compared to those of its primary competitors, and that the majority of its stores, including the Santa Rosa store where plaintiff was employed, maintained an excess of full-time as compared to part-time associates, based on each particular store's sales volume. Kmart concluded that modifications to the staffing levels in its stores could help achieve cost savings and would also allow for flexibility in scheduling within each store.

In order to achieve the optimal mix of full-time as opposed to part-time associates, individual Kmart stores had to make various staffing changes. Many stores had to eliminate excess full-time associates and move to a workforce with more part-time workers. This program was known as the "Workforce Adjustment Program." Kmart's management finalized the Workforce Adjustment Program in December 2005.

Kmart developed detailed guidelines ("Workforce Adjustment Guidelines") to be used during the adjustment process. According to these Guidelines, the number of full-time associates in a given store would be determined by that store's sales volume, with consideration given to special circumstances. Any store that had an excess number of full-time associates would be required to reduce its full-time headcount in order to reach the

approved staffing level.

The Workforce Adjustment Guidelines contained detailed instructions for Store Coaches to use in determining which full-time associates would be terminated, and Kmart asserts that this is the process that was followed in the Santa Rosa store. In addition, Store Coaches were provided with Associate Performance Recap ("APR") forms, which contained more detailed instructions for carrying out the evaluation process.

The Guidelines provided that the Store Coaches would rate each full-time associate pursuant to the Workforce Adjustment Guidelines with a "1" (lowest) to "4" (highest) on four performance indicators – customer service, teamwork, demonstrated work habits, and effectiveness in position. All ratings were to be based on "observed, objective, job-related performance," and were not to be based on "race, color, religion, sex, national origin, age, or disability."

In addition, each associate's most recent annual performance evaluation was to be converted to the same "1" to "4" scale. Thus, each associate would receive five ratings – the four performance indicators, plus the rating for the most recent performance review. Each associate would then be ranked, and the lowest-ranked associates selected for termination. Following the rating process, all termination decisions were to be reviewed by the store's District Coach to ensure that the procedure and instructions in the Guidelines had been followed.

Kmart determined that seven out of the 28 full-time associates at the Santa Rosa store were to be terminated. Ray Lopez ("Lopez") was the Store Coach at the time of the Workforce Adjustment, and was therefore responsible for implementing the Guidelines and determining which associates would be terminated. Although Lopez had worked at the Santa Rosa store for seven years, he had been the Store Coach for only four months at the time of the Workforce Adjustment program. Thus, Kmart asserts, Lopez determined to include the store's three Assistant Store Coaches – Dan Marx ("Marx"), Jennifer Ragsdale ("Ragsdale"), and Katy Stanton ("Stanton") – in the ranking process to ensure that the ultimate ranking decisions were based on observed, objective job-related performance.

3

According to Kmart, after Marx, Ragsdale, and Stanton individually rated each of the full-time associates, they met with Lopez to discuss the employees and their ratings. Lopez then had a telephone conference with Mary Isaacks ("Isaacks"), the District Coach for the area in which the Santa Rosa store is located. Isaacks reviewed the Guidelines and the rankings, and approved the termination of the lowest-ranked employees.

During this process, plaintiff received ratings of "2" for three out of four individual performance indicators – customer service, teamwork, and demonstrated work habits – and a rating of "3" for effectiveness in position. Her most recent performance evaluation was converted to a "3," and her overall average score, based on the five ratings, was "2.4." Of the 28 full-time associates, plaintiff was ranked 22nd, and thus was terminated.

In addition to plaintiff, Kmart terminated three other employees – Carole Migneron, Irene Rea, and Marcus Watkins. Three other full-time employees – Mary Emerson, Ladonna Peterson, and Judy Hudacko – who ranked 26th through 28th, were not officially terminated at that time because they had been on leaves of absence for years, and were thus on unpaid status. It is Kmart's intention that if these three employees return to work, they will be terminated.

## DISCUSSION

A.   Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

4

than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

"To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. United States v. City of Tacoma, 332 F.3d 574, 578 (9th Cir. 2003). Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

B.      Defendant's Motion

   1.      Disparate treatment

Kmart argues that summary judgment should be granted as to the first cause of action for disparate treatment based on age, and the third cause of action for disparate treatment based on gender, because plaintiff cannot establish that Kmart's stated, nondiscriminatory reason for terminating her was pretextual and that Kmart intentionally discriminated against plaintiff based on her age or gender.

Plaintiff brings her claims under FEHA, which prohibits employment discrimination based on a variety of grounds, including gender and age. Cal. Gov't Code § 12940(a). "Disparate treatment" is intentional discrimination against one or more persons on

1 prohibited grounds.  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 n.20 (2000).  Absent

2 direct evidence of discriminatory motive, the courts apply the shifting-burdens analysis of

3 McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).  Guz, 24 Cal. 4th at 354.

4      The plaintiff bears the initial burden of establishing a prima facie case of

5 discrimination.  In order to establish a prima facie case, a plaintiff must provide evidence

6 that she was a member of a protected class; that she was qualified for the position she

7 sought or was performing competently in the position she held; that she suffered an

8 adverse employment action, such as termination, demotion, or denial of an available job;

9 and that some other evidence suggests discriminatory motive.  Id. at 355.  The fourth factor

10 is most commonly met by a showing that the defendant treated similarly situated

11 employees outside the protected class more favorably.  Id. at 355-56; see also Ruiz Diaz v.

12 Eagle Produce Ltd. Partnership, __ F.3d __, 2008 WL 901677 at *7 (9th Cir., Apr. 4, 2008).

13      If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the

14 defendant to rebut the presumption of discrimination by producing admissible evidence that

15 its action was taken for a legitimate, nondiscriminatory reason.  Guz, 24 Cal. 4th at 355-56.

16 If the employer sustains that burden, the presumption of discrimination disappears, and the

17 plaintiff must then provide evidence raising a triable issue as to whether the employer's

18 stated reasons are pretexts for discrimination, or must offer some other evidence of

19 discriminatory motive.  Id.

20      As an initial matter, the court finds that plaintiff has not established a prima facie

21 case of gender discrimination.  She concedes that both male and female part-time

22 employees were hired to perform her job duties after she was terminated, and provides no

23 other showing of evidence suggesting discriminatory motive.  Thus, Kmart's motion is

24 GRANTED as to the gender discrimination claim.

25      With regard to the claim of age discrimination, the court finds that plaintiff has

26 established a prima facie case.  The evidence shows that she is a member of the protected

27 class, that she was performing competently in the position she held, that she was

28 terminated from her position, and that the part-time employees who were hired to perform

6

the duties of her former position were significantly younger than she was. Although it is not a requirement that a plaintiff in an age discrimination case establish that she was replaced by someone outside the protected class, a showing that she was replaced by someone significantly younger may be sufficient for purposes of establishing a prima facie case. See id. at 366-67.

Thus, the burden shifts to Kmart to articulate a legitimate non-discriminatory reason for its decision to terminate plaintiff. Kmart contends that plaintiff was discharged as part of the Workforce Adjustment Program, which was necessary to reduce costs within Kmart, while at the same time enhancing customer service to enable Kmart to operate effectively within the competitive retail market. Kmart asserts that a reduction-in-force is not unlawful, even if the terminated employee is a good performer.

Plaintiff argues, however, that her termination resulted from a "false rating" of her performance under the Workforce Adjustment Guidelines and the instructions on the APR forms. She asserts that Kmart has been unable to provide a justification for the rating of "2" that she was given for "customer service," in view of the fact that her supervisor, Dan Marx, gave her a "4" for "customer service" in her February 2005 annual evaluation; and stated that he knew of no decrease in the level of her performance between February 2005 and December 2005, and that she was "very, very good with customer service."

Plaintiff contends that had she received a "4" for "customer service" rather than a "2" during the Workforce Adjustment ratings, she would have ranked 16 overall, ahead of five other employees who were retained. Thus, plaintiff argues, her termination resulted from the unexplained reduction in her "customer service" score.

Plaintiff also asserts that the evidence indicates that Kmart did not follow the Workforce Adjustment Guidelines in ranking the sales associates at the Santa Rosa store; and that there is no evidence that Ragsdale and Stanton participated in a meaningful way in the rating process, no evidence that Lopez discussed plaintiff's performance in a meeting with the Assistant Store Coaches, and no evidence that Lopez ever observed the performance of plaintiff or any other sales associate.

The court finds that triable issues of fact preclude summary judgment as to the claim of disparate treatment based on age. As the California Supreme Court made clear in Guz, "an inference of dissembling may arise where the employer has given shifting, contradictory, implausible, uninformed, or factually baseless justifications for its actions." Id. at 363. Here, the court finds that plaintiff has provided evidence sufficient to create a triable issue with regard to whether Kmart's explanation of its reasons for terminating her (as opposed to other employees) was pretextual. Accordingly, the motion is DENIED as to the age discrimination claim.

2. Disparate impact

Kmart argues that summary judgment should be granted as to the second cause of action because plaintiff cannot establish disparate impact based on age as a result of Kmart's decision. Unlike "disparate treatment," which is intentional discrimination on prohibited grounds, "disparate impact" focuses on the adverse effect of a facially neutral employment practice. See id. at 354 n.20. The California Legislature has expressly adopted the disparate impact theory in age discrimination cases. Cal. Gov't Code § 12941.

To prevail on a theory of disparate impact, an employee must show that, regardless of motive, a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a disproportionate adverse effect on certain employees because of their membership in a protected group. Guz, 24 Cal. 4th at 354; Frank v. County of Los Angeles, 149 Cal. App. 4th 805, 817 (2007).

The plaintiff must do more than assert that the policy has harmed members of the group to which he or she belongs. Carter v. CB Richard Ellis, Inc., 122 Cal. App. 4th 1313, 1324 (2004). To establish a prima facie case of disparate impact, plaintiff must identify the specific employment practice or selection criteria being challenged; show that the policy has a significant adverse effect on persons of the protected class; show that the impact of the policy is on terms, conditions, or privileges of employment of the protected class; and show that the employee population in general is not affected by the policy to the same degree. See Garcia v. Spun Steak Co., 998 F.2d 1480, 1486 (9th Cir. 1993).

8

1  To prove causation, the plaintiff must offer "statistical evidence of a kind and degree
2  sufficient to show that the practice in question has caused [the plaintiff's terminations]
3  because of their membership in a protected group." Rose v. Wells Fargo & Co., 902 F.2d
4  1417, 1424 (9th Cir. 1990).

5  If the plaintiff establishes a prima facie case, the burden shifts to the defendant, who
6  may either discredit the plaintiff's statistics or submit its own statistics which show that no
7  disparity exists, id., or establish some other affirmative defense.[1]  If the defendant meets its
8  burden, the plaintiff must then show that "other . . . selection devices, without similarly
9  undesirable discriminatory effect, would serve the employer's legitimate interest in efficient
10 and trustworthy workmanship." Id.

11 Kmart contends that plaintiff has not offered any statistical evidence, and asserts
12 that she cannot, because she has not designated an expert to offer such evidence, and has
13 not offered any statistical studies in discovery.  Kmart also argues that to the extent that
14 plaintiff alleges that the Workforce Adjustment program adversely impacted older
15 employees because Kmart limited the program to full-time employees (who generally earn
16 more), she is required under Government Code § 12941 to show that the use of that
17 criterion adversely impacted older workers as a group.  Kmart asserts that plaintiff cannot
18 meet this burden because there is no evidence that the Workplace Adjustment Program
19 had a disparate impact on older workers as a group.

20 For its part, Kmart provides evidence showing that there were 28 full-time associates
21 in the Santa Rosa store prior to the Workplace Adjustment, with an "excess" of seven
22 associates.  Three of the seven associates considered for layoff had been out on leaves of
23 absence for years, and were scheduled to be terminated if they ever returned to work.  Of
24 the remaining 25 full-time employees that were ranked, 21, or 75%, were over the age of
25 40.  Of the 21 full-time associates who were retained by Kmart, 16 or 76%, were over the

---

[1] An employer can defend FEHA age discrimination claims on the same grounds as applicable to FEHA discrimination claims generally – e.g., good cause, bona fide occupational qualification, or compulsory arbitration agreement. See Cal. Gov't Code § 12941.

9

age of 40. Thus, Kmart asserts the percentage of 40-and-older full-time workers was actually higher after the Workforce Adjustment than it was before (76% vs. 75%). Moreover, 11 out of the 16 over-40 retained associates were over the age of 50, with 4 of those being over the age of 60.

As for the four full-time associates who were terminated as part of the Workforce Adjustment, two were under the age of 40, and two were over the age of 40. Thus, Kmart asserts, of the four full-time associates who were terminated, the numbers fell equally on both sides of 40. Kmart argues that plaintiff cannot demonstrate that older workers as a group were adversely affected.

In opposition, plaintiff argues that there are disputed issues of fact as to whether Kmart's decision to terminate only full-time employees had a disparate impact based on age. She contends that Kmart's Workforce Adjustment was an employment practice that was facially neutral in its treatment of different groups, but that in fact fell more harshly on one group than another, and cannot be justified by business necessity.

According to plaintiff, the average age of the Santa Rosa store's full-time employees before the Workforce Adjustment was 50 years, and that the average age of those terminated was 55 years (if Marcus Watkins is included) and 60 years if he is not. She also asserts that the average age of the part-time workforce prior to the Workforce Adjustment was approximately 29 years, and the average age of the part-time workforce hired after the Workforce Adjustment was approximately 24 years; and that in the six months after her termination, Kmart hired another 83 part-time workers whose average age was approximately 24 years.

The court finds that the motion must be GRANTED. Plaintiff has not established a prima facie case of disparate impact. First, it is not clear which specific employment practice she is challenging. She first states that Kmart's "decision to terminate only full-time staff" had a disparate impact on "her and others because of their age." Alternatively, the remainder of her discussion appears to challenge the entire Workforce Adjustment Program. To the extent that plaintiff is challenging the entire Workforce Adjustment

10

Program, she has provided no evidence that the entire Program was an "employment practice" that fell more harshly on one group of Kmart employees than on another.

In addition, regardless of how the "employment practice" is defined, plaintiff has not established that this practice had a significant adverse effect on persons over 40. In particular, she has not rebutted Kmart's statistical showing that the percentage of over-40 full-time employees remaining at the Santa Rosa store after the Workforce Adjustment was slightly higher than the percentage before the Workforce Adjustment. Instead, she asserts that the "average age" of full-time employees prior to the Workforce Adjustment was 50 years, and that the "average age" of those terminated was 55 years.

The only evidence plaintiff cites in support is the declaration of her attorney Mr. Theusen, who simply attaches as Exhibits 8 and 9 to his declaration Kmart's Exhibits A (10-page chart) and C (13-page chart), provided as part of its amended responses to plaintiff's Interrogatories Nos. 4 and 10. The attached exhibits consist of a wide range of information regarding all full-time and part-time, salaried and hourly, and temporary and regular employees who worked at the Santa Rosa store between December 2005 and December 2007.

However, plaintiff provides no explanation of the methodology used to calculate the "averages," and fails to identify which employees she is including in her calculations or the dates she characterizes as "immediately prior to," "after," and "in the six months following." Plaintiff has not designated an expert to show disparate impact, and there is no way to tell whether plaintiff's "statistics" are accurate.

More to the point, "average age" is not the issue in a disparate treatment case – it is the number of employees. The "average age" of the part-time employees after the Workforce Adjustment is irrelevant to plaintiff's claim that the decision to terminate only full-time employees had a disparate impact on older workers.

In addition, plaintiff's purported evidence of numerical favoritism toward younger workers is generated from an extremely small employee pool – 28 full-time employees at the Santa Rosa store who were considered for termination. In general, courts have

rejected any inference of intentional bias in cases where the sample is too small to demonstrate a reliable discriminatory pattern. See Sengupta v. Morrison-Knudson Co., Inc., 804 F.2d 1072, 1076 (9th Cir. 1986); see also Shutt v. Sandoz Crop Protection Corp., 944 F.2d 1431, 1433 (9th Cir. 1991).

## CONCLUSION

In accordance with the foregoing, the court GRANTS the motion for summary judgment as to the disparate treatment claim for gender discrimination and the disparate impact claim for age discrimination, and DENIES the motion as to the disparate treatment claim for age discrimination.

The parties are referred for a mandatory settlement conference on the remaining claim by separate order.

**IT IS SO ORDERED.**

Dated: April 22, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge